IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSH TAYLOR, <br>                Plaintiff, <br><br> vs. <br><br> LARRY SHIELDS, <br>                Defendant. | Civil Action No.: 2:13-cv-2241 |

**PLAINTIFF'S SUPPLEMENTAL BRIEF REGARDING THE APPLICABILITY OF LOS ANGELES V. MENDEZ TO THE INSTANT ACTION AND PENDING MOTION FOR NEW TRIAL**

MARK B. FROST & ASSOCIATES
Mark B. Frost, Esq.
Ryan M. Lockman, Esq.
1515 Market Street, Suite 1300
Philadelphia, PA 19102
(215) 351-3333
Attorneys for Plaintiff

Dated: May 17, 2017

The Court has requested briefing as to the applicability of Los Angeles v. Mendez, 815 F.3D 1178 (9th Cir.), Cert. Granted In Part Sub Nom, 137 S. Ct. 547, 196 L. Ed. 2d 442 (2016), to the instant action. For the reason set forth below, Mendez potentially has significant ramifications for the instant action, and thus the Court should defer ruling on Plaintiff's post-trial motion until a ruling in Mendez is issued by the Supreme Court, which will occur by next month at the latest.

In Los Angeles v. Mendez, two Los Angeles Sheriff's Deputies entered a residential property without a warrant. They then encountered a shack located in the backyard of the residential property, in which Plaintiffs were living at the time. Plaintiff Mendez heard the officers searching the backyard, but the defendants did not identify themselves as officers. The officers barged into the shack, unannounced. At this point, Mendez, who happened to be holding a BB gun to ward off rats and other pests in the shack, began to sit up. One of the officers, upon seeing Mendez with a gun, yelled "gun!", and both officers then fired upon Plaintiffs, injuring them.

At trial, the court found that the officers *had not* committed excessive force. However, the court *did* find the officers liable under a "provocation" theory, which has been adopted in the Ninth Circuit. Under this doctrine, an officer may be held responsible for an otherwise reasonable use of force when the officer intentionally or recklessly provoked the violent confrontation in which the force was used, and the provocation was itself an independent Fourth Amendment violation. The Ninth Circuit upheld the decision under its "provocation" doctrine, and also framed the Plaintiffs' injuries as being reasonably foreseeable based on the initial unreasonable entry into the home:

> "Under these principles, the situation in this case, where Mendez was holding a gun when the officers barged into the shack unannounced, was reasonably foreseeable. The deputies are therefore liable for the shooting as a foreseeable consequence of their unconstitutional entry even though the shooting itself was not unconstitutionally excessive force under the Fourth Amendment."

Mendez v. County of Los Angeles, 815 F.3d 1178 (9th Cir. 2016).

Certiorari was granted on December 2, 2016 (after trial in the above-captioned matter), and briefing was concluded on March 11, 2017. Oral argument was held on March 22, 2017[1]. The issue is essentially whether officers may be liable for *reasonable* uses of force provided that their prior improper conduct provoked the deadly force confrontation in the first place.

Causation is a necessary element of a constitutional claim. See Monroe v. Pape, 365 U.S. 167, 187 (1961) (Section 1983 is "read against the background of tort liability that makes a man responsible for the natural consequences of his actions."). Some circuit courts have taken the next step of analyzing this particular factual scenario – an unreasonable search which leads to an otherwise reasonable use of force – in the framework of proximate cause. In certiorari briefing before the Supreme Court in Mendez, plaintiff-respondents pointed to Bodine v. Warwick, 72 F.3d 393 (3d Cir. 1995), which adopted such a framework. In Bodine, a situation occurred where law enforcement officers conducted an unconstitutional search of a home which then led to a deadly confrontation. The Court made clear that an officer's liability for unlawful conduct is to be determined by "basic principles of tort law," including principles of proximate cause. As a result, police officers who illegally enter a suspect's home "would not be liable for harm produced by a 'superseding cause", but "would be liable for the harm 'proximately' or 'legally' caused by their tortious conduct." The court held that if the jury were to determine "that the troopers' entry was unlawful, it will be necessary to determine how much of the injury suffered by Bodine was proximately or legally caused by the illegal entry." The court also recognized that while the illegal entry and excessive force claims are separate, "[t]he harm proximately caused by these two torts

---

[1] Oral argument in Mendez occurred after the filing and briefing of Plaintiff Taylor's post-trial motion. Plaintiff's counsel discovered the Mendez case shortly before the March 22 Supreme Court oral argument. Thus, at oral argument on the post-trial motion in the instant action, Plaintiff Taylor's counsel raised Mendez, and the Court ordered briefing related to same.

may overlap." Moreover, the Tenth Circuit has previously applied a proximate cause framework in a similar case in 2016; when an officer shot a plaintiff after unlawfully entering his home, the court stated that "because a reasonable jury could determine that the unlawful entry was the proximate cause of the fatal shooting of [Plaintiff], we need not decide whether [Defendant officer] used excessive force when he confronted [Plaintiff]." Attocknie v. Smith, 798 F.3d 1252 (10th Cir. 2015), cert. denied, 136 S. Ct. 2008 (2016).

In the instant action, this provocation doctrine would create a theory of liability for Plaintiff Taylor, even if the force used by Shields was reasonable, because Shields' conduct prior to the shooting unnecessarily provoked the deadly force incident in the first place. As Taylor walked to his home, Shields approached Taylor, did not identify himself as a police officer, did not display his badge, and did not display his police ID. Shields then attempted to grab Taylor and took out his weapon at the same time. Frightened for his safety, Taylor ran into his home while defendant chased him. Taylor did not believe or know that defendant was a police officer. Subsequently, Taylor ran into his home. As Taylor entered his home, he closed the door, stumbled and fell onto the floor. Then, Shields failed to knock or announce, unlawfully opened the front door, entered Taylor's home, and shot Taylor.

Shields then ran out of the house. At no time prior to the shooting of plaintiff did Shields give any clear command to plaintiff immediately prior to shooting him. At no time prior to the shooting of plaintiff did defendant attempt to call for back-up or alert on-duty officers and/or the Philadelphia Police Department (PPD) as to the aforesaid incident. At no time prior to the shooting did Plaintiff pose any threat to defendant. Shields did not call 911 before or after the shooting, contrary to PPD policy. Shields then ran out of the house and went back into his sister's home. The evidence in indicates that Shields unnecessarily and improperly provoked the confrontation and Shields' use of deadly force. As indicated above, whether Shields' use of force was ultimately reasonable is not the end of the matter – his provocation of the shooting creates a theory of liability here.

3

This is precisely the type of situation in which the provocation doctrine would apply – despite the jury finding that Shields' force was reasonable, Shields' conduct undoubtedly instigated and caused the incident in the first place. Each step of the way, Shields' improper conduct snowballed into a deadly force incident: inserting himself into the situation instead of calling 911, failing to properly identify himself, attempting to grab Taylor, chasing him to the house, opening the door and *entering* the home without a warrant. Had Shields simply acted properly, the shooting surely would not have occurred.

As of today, the Supreme Court has not yet ruled in <u>Mendez</u>, and predicting the ultimate outcome and reasoning of the Court is impossible. Obviously, the Supreme Court could rule in a manner which eliminates the provocation theory entirely, it could adopt the provocation theory, or it could rule somewhere in between. However, should the Supreme Court adopt the Ninth Circuit's provocation rule or something close to it, then Shields' conduct prior to the shooting and the off-duty policy becomes more probative. Because we do not know how the Supreme Court will rule, this Court in the instant action should wait to rule on the instant motion, since the off-duty policy could become more relevant based on the language of the <u>Mendez</u> Opinion. It seems clear that <u>Mendez</u> could easily affect issues directly and indirectly related to the off-duty policy, to the issues in the post-trial motion, to Plaintiff's theory of liability, and to the case in general.

Therefore, this court should delay ruling on the post-trial motion until after a decision is rendered in <u>Mendez</u>, which should be issued prior to the Supreme Court's end of term next month.

Dated: May 17, 2017                                       MARK B. FROST & ASSOCIATES

<u>/s/ Mark Frost</u>
Mark Frost, Esq.
Ryan Lockman, Esq.
Counsel for Plaintiff

CC: Opposing counsel (via ecf)